22-3122. Does it feel unusual to be sitting on that side of the room? It is, the room looks very strange. Okay, counsel. Good morning and may it please the court, David Abramowitz for the United States. Very specific and long-standing procedures, each with very specific standards, govern how defendants can challenge criminal convictions. They can move for a judgment of acquittal under criminal rule 29. What if it is not a challenge to a conviction? Well, a conviction or a sentence. So what if it is not a challenge to a conviction? Let's just leave it at that. I suppose it depends what it would be a challenge to, but there are very specific rules that govern even what types of challenges can be brought and where those can be brought. So if it's a challenge to an unlawful sentence, that too can be challenged on direct appeal, on habeas 2255, on a second or successive habeas, if the procedures are met. But in this case, the district court upended the entire procedural framework for challenging convictions or sentences when it granted Joe Fernandez compassionate release based primarily on its innocent but potentially innocent. And that order made several fundamental- I assume it wouldn't have mattered to you, to your view of the case, that they had said the mistake made is innocent will give him compassion? That is correct. Even if the court had found that he's actually innocent, we believe that's a claim that's not cognizable under section 3582. I suppose it's all the more so when it's not even a finding that he's actually innocent. Because that order, and this would apply to actual innocence as well, makes several fundamental errors. It ignores limits on compassionate release claims that this court and almost all the other federal courts of appeals have recognized. It undermines interests and finality. It undermines the interest, the principle that courts defer to jury verdicts. And in this particular case, it ignored the record. It ignored the factual record, including the record of the district court's own findings from years ago, much closer to the trial, about the evidence of Fernandez's guilt. This was all Judge Heller's statement? Correct. This was not assigned from one judge to another, right? This was all the same district judge. And so that order should be reversed. And I'd like to talk first about cognizability, and then second, if time permits, about why even assuming Fernandez's innocence and sentencing arguments were cognizable, why it was still an abuse of discretion to credit those arguments here. So on cognizability, arguments attacking the validity of a conviction or of a sentence are not cognizable in a motion for a sentence reduction. That's clear from precedent, and it's clear from Section 3582's text, its structure, and its history. This court has said that defendants want to challenge the validity of their convictions or sentences. So your friend, who I know on the other side, says we're not actually challenging the validity of the conviction. And for example, I think you would agree that Mr. Fernandez could bring a 2255, and it would not be deemed a successive 2255 petition. We are, and Judge Brooker, other than issues relating to rehabilitation, we've said that a district court judge in the compassionate release context has significant discretion to really consider just about anything in assessing whether or not to grant the motion for compassionate release. So that goes back to my initial question, which is what if it's not a specific attack on the validity of the conviction, so there's no assignment of legal error by Judge Ellerstein to the jury's verdict, but real concerns? Well, I think just to push back on the idea that it's not an attack on the validity of the conviction, I understand the defense's innocence. That distinction is not found in any authority. And validity here is not a term of art. The court has not used it as a term of art in Amato or in Jock. It just means the state of being correct, legally correct, well-grounded. And there's no meaningful difference between the claims here, the claims that, in fact, the defendant is actually innocent, and the types of claims that were raised in Jock and in Amato, where the defendants were basically challenging again the evidence at trial. In fact, in at least one of them- There is no other road to his release so far, other than presidential pardon. That's true, but that's not an argument for why he should be allowed to use this as a vehicle. But this is not a pardon. This would be the equivalent of a commutation, not a pardon. Of course, but releasing him from a life sentence after 11 years is, of course, a substantial break. It's very meaningful. And the fact that- Well, let me ask you this. If Judge Hellerstein had used some other set of factors, not necessarily entailing or even remotely challenging the validity of the conviction, I agree with you, whatever that means, then would he have, under the First Step Act, been authorized or empowered to grant the compassionate release motion here? If he had relied on- Sort of factors that the government couldn't say was invalid, wasn't a runaround or end run. So there are certainly factors courts can rely on to go below a mandatory minimum. For instance, if someone's terminally ill or if there are serious health concerns, family responsibility concerns, sort of more the traditional factors we think about when we think about compassionate release. He has the authority, generally speaking. Your only challenge is to the factors that he relied, the two factors that he relied on. That's right, because those types of arguments, whether or not they could succeed in a habeas petition, are the types of arguments that need to be raised there. And the fact that they can't succeed there, if that's the case, is really by design. It's because Congress and the courts have imposed certain restrictions on defendants' abilities to challenge final convictions and sentences. Counsel, you indicated, obviously, the pardon, because he has exhausted his appeals and his 2255, correct? Yes. In fact, it was the same judge who decided the 2255. And all these issues that caused him disquiet were raised in that 2255 proceeding. That's correct, and they had also been raised in post-trial motions. So apparently the disquiet didn't occur then for the trial judge, correct? Yes, that's correct. Let me ask you this. Is there anything precluding this defendant from seeking a subsequent compassionate motion, a motion for compassionate release? I know he cited COVID and age and health reasons, but nothing precludes him from filing a subsequent with some other reasons other than something that would be akin to challenging the validity of his conviction. That's correct. The compassionate release statute does not have the sort of restrictions on second or successive motions that you find in section 2255. It's simply our view that there are only certain types of claims that can be brought onto that statute. So you're not suggesting that there wouldn't be, whether that's ultimately successful or not, that there wouldn't be another avenue of getting some form of sentence reduction from a life sentence? Correct, although we don't think that there's another avenue to do so based on these same claims that have already been rejected multiple times about the trial evidence and claims insinuating that there was some sort of government misconduct. But you agree that there's a, well maybe you don't agree, that there's a categorical difference between a 2255 determination, that is where a petitioner seeks to undo his or her conviction, and a motion for compassionate release. I understand that you think that this is effectively a runaround, but he still stands convicted, is that correct? He does. Okay, there are collateral consequences that attach to that conviction. There are. Maybe lifetime consequences, who knows, right? Right. So wouldn't you agree then, just by virtue of that, that that is a difference? I'm just trying to understand. It is a difference, yes. It is a difference. It is not a difference that excuses what was here an end run around the vehicles that are available to the defendant to get out of his life sentence. Let me ask you, so there are two separate grounds, and I'm trying to actually understand whether Judge Hellerstein meant in his decision to suggest that either one of those grounds supported effectively a full commutation, or whether those grounds in combination did that. What's the government's reading? Our reading is that he found that in combination, they support extraordinary and compelling reasons. And if you look at the order, there's simply one, there's just one heading that says, I believe, something like, you know, there's reason to question the jury's verdict. And the entire analysis falls under that heading. And in fact, the sentence disparities analysis seems to be motivated primarily by the judge's finding that he's not sure this defendant is guilty. And so it does not appear to be two independent grounds that the judge is finding that each constitute extraordinary and compelling reasons. Let me just focus then for a moment on the sentencing disparities component of the analysis. Let's put it that way. And I was a little puzzled, but maybe I misunderstood the argument that, I guess, your position is that a judge faced with a motion for compassionate release cannot consider sentencing disparities. Is it that stark? Well, certainly, they can be considered under the 3553A factors that have to be- So you're foreshadowing my next question. Yes. But in terms of establishing extraordinary and compelling reasons, no, we do not believe that that's an argument that can be raised for that step of the compassionate release analysis. That is a classic attack on sentencing, a classic, yeah, allegation of a sentencing error. That's the type of claim that, again, is raised on direct appeal. And the defendant has pursued all those types of arguments here. If the presider will allow me, just where does the first step fit into this proceeding? Is it just a question of who can bring this action? The defendant can bring it himself after exhausting administrative remedies, or waiting 30 days for a lack of response, and in some cases from the BOP. But does that set the first step out? That's under the compassionate release statute, which is part of the, as amended under the First Step Act. That's what I want to know. I hear the First Step Act all over this court. Yes. And it seems to mean different things at different times. Have we ever, or to your knowledge, has any certain court stated that sentencing disparities cannot be or constitute an extraordinary and compelling reason for granting a motion for compassionate release? So I don't believe this court has said that. In Roney, certainly the court said that a compassionate release motion is not an opportunity to second guess or reconsider the sentencing court's initial decision. That was a summary order by this court. I do believe at least one or two other circuits have said that disparities are not an appropriate basis. I might need a minute to check my notes, and I could get back to you on that. It seems to me a little odd. And particularly given what we've said in Brooker and some other cases about the wide range of discretion. And as a policy matter, some of us may not like it, but Congress seems to have given not the executive but federal judges a significant amount of discretion in determining whether or not to grant release focused on the word compassionate. Well, certainly in this case, too, there is an issue that these sentencing disparities are not unwarranted. Based on the same district judge's own findings at the sentencings of Fernandez and the co-defendants, there were good reasons why they received different sentences. Most prominently, several of the co-defendants cooperated. And one of the co-defendants was not charged with murder. He was charged with a drug offense. In other words, Mr. Fernandez went to trial, did not cooperate, and was convicted of participating in a double murder for hire. And so even assuming sentence disparities could support a compassionate release motion in some cases, there's certainly nothing extraordinary and compelling about sentence disparities here that are totally warranted for obvious reasons. And so this, I think, goes to your second overall argument, namely that even if we reject a categorical rule that would foreclose a district court judge from using a concern or relying on concerns about conviction or sentencing disparities, there was an abuse of discretion here. That's correct. And as to, I think, what's the bulk of the district court's order, which is the analysis of the conviction and whether the jury got it right, it relies on a number of findings that flatly contradict the same district judge's own findings from years ago, findings about the strength of the evidence and the main cooperator's credibility. If you look in the appendix, there are multiple examples of the district judge finding, for instance, in April 2014, that there is no indication beyond Fernandez's say-so that Darge, the main cooperator, that he lied. There's a November, that's page 59 of the appendix, that the district court later found that this is not an extraordinary case, extraordinary, that warrants application of the actual innocence doctrine. That's at 155 of the appendix. And there are findings that the ballistic evidence corroborates Patrick Darge's testimony, which is absolutely true, as discussed at pages 11 and 12, sorry, 12 to 13 of our reply brief. And those findings are suddenly contradicted for no reason, not based on any new evidence in the district judge's order granting compassionate release. Just one more example, the district judge's order expresses concern or doubts about whether the government believed its main cooperator, given the plea offer that was extended to a co-defendant, to Rivera. And that completely contradicts what the district court has said in the past, which was in April 2014, it said there is no evidence in the record indicating that the government believes or knows that Darge was lying, and indeed, the evidence was consistent with Darge's testimony. That's page 59 of the appendix. And I'm sorry, I wanted to just ask this question because of time, and I know you're over time. When it comes to relying on sentencing disparities, there are several circuits that weighed in on this. And based on our research, all have said, no, you can't rely on sentencing. But the Hunter case in the Sixth Circuit gave reasons why sentencing disparities shouldn't. And it stated that the circumstances that lead to extraordinary and compelling reasons are typically circumstances or facts that occur post-sentencing. So in this case, the trial judge knew the sentencing of the co-defendants who had pled guilty and cooperated. At the time, this defendant was sentenced, correct? Yes, that's correct. That information was available to the trial judge. That's correct. And there's nothing new that the judge relies on in crediting the sentence disparity argument. And in fact, given that sentence disparities are usually analyzed on a national scale, and by comparison to defendants who are convicted of the same offense, there can be no disparity here because we're talking about an offense with a mandatory minimum life sentence. And that didn't change with the STEP Act, right? That's correct. That's something Judge Hellerstein said, well, it would change today, but it wouldn't. If this defendant were convicted of these same offenses today by a jury, he would be required to impose the same sentence, correct? That's correct. At this point, it's just count one because count two has been vacated for Davis reasons. But yes, it would still be a mandatory life sentence. Thank you very much. You deserve some time for rebuttal. We'll hear from counsel for Mr. Fernandez. Thank you, Your Honor. May it please the court. My name is Benjamin Gruenstein, and I represent Mr. Fernandez. I'd like to begin with a statement that Mr. Abramowitz made where he said that a challenge to a justness of the conviction or sentence is a concept not found in any authority. In fact, it's a concept found in this court's decision in Brooker, where the court said that the defendant's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction. Indeed, Congress seemingly contemplated that courts might consider such circumstances when it passed the original Compassionate Release statute in 1984. And there's no reason not to interpret the First Step Act in that way. Simply from a textualist perspective, the statute says that a court can grant Compassionate Release for any extraordinary and compelling circumstance. And there is no basis to find that factors like susceptibility to COVID count and factors like whether the defendant might actually be innocent do not count. The statute does not allow for any exceptions save one, which is that the court may not rely exclusively on the defendant's rehabilitation. If I could speak briefly. But the Brooker case that you cite and the Concepcion case, they did not involve claims of actual innocence as a basis to grant Compassionate Release for extraordinary reasons, correct? That's correct, Your Honor. But the Brooker case did involve a question about whether a mandatory minimum sentence was just and that the sentence was too high. And therefore, it does support a finding, a broad finding, that any circumstance that is extraordinary and compelling should count. The AUSA also spoke about all of the ways in which the court's findings now are contradicted by his prior findings on habeas. But the only contradiction arises because the judge knew that he was not allowed to on habeas. He did precisely what he was supposed to do. Now, however, on Compassionate Release, he is making his credibility determinations. He was the judge who presided over this trial and saw Darge testify. He could have ordered a new trial if he was so disquieted about the validity of the jury verdict because of the lack of a challenge to the ballistics. He could have said, hey, counsel should have raised this issue. He's entitled to a new trial because of counsel's performance and questioned the validity of the verdict at that stage. And that didn't happen. Well, I'm not sure, Your Honor, that that could have been raised on direct appeal or on a Rule 29 or Rule 33 motion because the judge had to take Darge's testimony as given. He could not make his own credibility determinations. As to Your Honor's question about the ineffectiveness. But he could have said, hey, his credibility would have been challenged if counsel had raised the appropriate arguments before the jury, if counsel had challenged one of the state's key witnesses. But that didn't happen. I think that's what's troubling, concerning me, is that you have the same trial judge who sat through the trial, heard the evidence, had a motion for judgment of acquittal, denied it, had post-trial motions, denied it. There was a direct appeal. The conviction was affirmed. Then there's a 2255 before the same judge who doesn't say, hey, I really have concerns about this verdict. And I have concerns about counsel's performance and not raising a key defense. And now does it under this type of motion. I think that's the problem here, isn't it? Well, Your Honor, I actually believe that Judge Hellerstein did make those points in his most recent decision on a 2255. But it's important to recognize that this motion that we brought on behalf of Mr. Fernandez was not based exclusively on the ballistics evidence. And it's not even clear that Mr. Fernandez's counsel was ineffective for not doing a better job with the ballistics evidence. So it's not clear that this claim could have been brought on habeas. And in any event, it is not a claim that is challenging the conviction. We are not challenging the conviction. No, no, you're not. But the judge in granting the motion for extraordinary relief did. I think that's the problem. I understand that you didn't bring that claim. As part of the motion. But the judge did. And that's what's under review before us. And if my concern is this, if that's an avenue to grant a motion for compassionate relief, then every defendant who claims they were either some sort of claim of innocence or an unfair trial or some kind of claim of justice could under this type of motion seek disrelief. Then it becomes, in essence, another 2255 or another form of appeal of a conviction. Well, Your Honor, the court was very clear in his decision on this motion that he was not challenged or that he was not questioning the validity of the verdict. As far as whether this could open the door to other challenges of actual innocence, most of those challenges are properly brought on habeas. Whether as- And you're right, the judge did say, well, it's probably still a valid verdict. But how do you, how can you argue that that's not what the judge relied on as a basis for finding extraordinary reasons to grant compassionate relief and give them time served? When the cooperating witness whose credibility now questions received, what, 30 years? That's right, Your Honor. But the judge was crystal clear in his rulings on the post-trial motions as well as on the habeas that the verdict stands, that the verdict was good. The verdict was based on sufficient evidence because it was based on the testimony of the cooperating witness, which he could not question at any of those stages. On the motion for compassionate release, he can question that. For example, he can look at the government's charging decision on co-defendant Rivera and that the government pled out the getaway driver to a narcotics offense that got him two years. Of course, that's not evidence that can go in front of the jury. That would not be relevant to the jury. But the judge who has immense discretion under the First Step Act certainly can consider that. And the judge was troubled by that. And when we look at whether- I'm sorry, I'm sorry. But you were referring to the First Step Act, whereas your colleague on the other side did so only in response to my question. Explain to me, please, and then you can continue to answer the question you were asking. But could you explain to me how the First Step Act fits into the analysis? Sure. So the First Step Act is an amendment to the Compassionate Release Statute, which the Compassionate Release Statute allows a judge to grant compassionate release after considering the 3553A factors and then determining that there is an extraordinary and compelling circumstance that would allow for a reduction in sentence. Under the original Compassionate Release Statute, the original motion had to be brought by the Bureau of Prisons. The First Step Act, which is the codification of the amendment, no longer requires the Bureau of Prisons to bring the motion, but rather the defendant himself can bring the motion. But that's the main thing here. The defendant could do it, and the Bureau of Prisons doesn't have to. That's right, Your Honor. That's right. So going to the justness of the sentence, the AUSA cited, said, well, of course, there was a reason that Mr. Fernandez got a higher sentence because he was convicted after trial to a mandatory life sentence. Yes, that's a reason, but that doesn't mean that the discrepancy between the sentence he received of life and the sentence that Mr. Rivera received after the government plead him out of two years is not extraordinary. But Mr. Rivera was not convicted, well, I understand the offer was a drug offense, but he was never charged as the shooter, correct? He wasn't. That was a decision that the government made. No, I understand that's the decision the government made, but even under the facts of the underlying case, you're not suggesting that your client stood in the same position as Mr. Rivera. I don't think he's- He allegedly, or the jury convicted him of going in with Mr. Darge and shooting and killing two individuals. That's different than being the driver of a getaway car, correct? Well, it is different. Rivera also did provide the gun that was used. Now, he was not only the getaway driver. And while it's different, the judge has the discretion to decide. It's not different enough to warrant a discrepancy between life in prison and two years in prison, which is what Rivera got. And the AUSA said, well, there are obvious reasons why there are all of these differences in sentences. One defendant cooperated, one was convicted after sentence. The government has never explained why Rivera got two years. I mean, you're comparing Rivera that got two years to, what about Mr. Darge, who got 30 years, who was the other shooter after cooperating and pleading guilty? Isn't that a better comparison? And by granting this motion, Mr. Fernandez is out after serving 11 years, correct? Your Honor, I think there were many defendants that could be compared. There was Mr. Rivera who got two years. There was Mr. Darge who got 30 years. And the judge knew Mr. Darge because he had been a cooperating test previously in front of Judge Hellerstein, and he did not admit to these murders, the murders that he's now, that he testified about, he didn't admit to originally. So Judge Hellerstein knew Darge, right? In addition, there's another defendant that we pointed to in front of Judge Hellerstein, and that was Jeffrey Minaya, who was the drug kingpin. He was the one in charge of this entire organization. He ordered the hit. He was out, he's been out for years now. He was sentenced to 15 years. It was reduced to 14 years. And so 14 years is roughly serving 11 years in jail. So Mr. Grunstein, as I understand it, with respect to the abuse of discretion argument that was made by Mr. Baumritz, the argument is at least in part, maybe in substantial part, that Judge Hellerstein contradicted himself, both with respect to the expression of disquietude relating to the conviction, as well as the sentencing disparities. And the government, if I understand it correctly, and the government will correct me if I'm wrong, on rebuttal, says that we should assign, set aside all of these arguments about a categorical foreclosure, we should assign error, whether it's abuse of discretion, clear error, because of that. That is, Judge Hellerstein says one thing on date X, and X plus one, he says the opposite. Why isn't that correct? Because on date X, that was direct appeal, or that was post-trial motions and habeas. He was not allowed to make credibility determinations. He was not allowed to assess the credibility of DART. He was not allowed to take into account the government's decision to charge Rivera in such a way that he would get two years. In fact, the judge had no discretion at that point to order a sentence that was at all less than life in prison. In fact, had the judge had that discretion, he may very well have ordered it at that time. But to me, taking absolutely what you say about being correct, a little odd to me that all this period of time, that during, that the judge never said before, I'm very troubled by this, but I can't change it. He never said anything like that, did he? He did, Your Honor. At sentencing, he certainly expressed that a life sentence was very high for this defendant. And then on habeas, when this was raised, he said it again. And that's what led us to file the motion for compassionate release. And the- And I'm troubled by your, a judge, a trial judge looking for assessing a motion for acquittal, notwithstanding the verdict, can take into account the evidence the jury heard, can make assessments of whether the evidence is sufficient to support a conviction. That never happened here. You know, that's, I think, what's troubling. He may have had concerns about a life sentence for this type of crime, which is statutorily mandated. But that's very different from saying, I have concerns about the underlying conviction itself. And I don't see that in the record. When did Judge Hellerstein, prior to this decision on the compassionate relief, say, I have concerns about the legitimacy of the verdict and the evidence against your client? Judge Hellerstein did express concerns in his decision on the 2255. However, his concerns did not, at no point did he say there was insufficient evidence, because the evidence was sufficient. Darge pinned him at the murder. The evidence was totally sufficient. And had Judge Hellerstein substituted his own credibility assessment for the jury's verdict, then the AUSA would be up here appealing a decision on a Rule 30 free motion. But I think, well, who knows what the government would have done. But I think that the, and we've all seen this in the habeas context, even in the direct appeal context, understanding that the judge cannot reassess credibility. Judges express disquietude all the time, or not. And so there was nothing preventing Judge Hellerstein from expressing disquietude and then saying, look, I can't do anything about this, because at this stage, in the context of this particular proceeding, I cannot reassess credibility, as you point out. And that's the problem, or a problem. Your Honor, I do believe that Judge Hellerstein did say something to that effect at sentencing. I believe he said something to that effect at Darge's sentencing. I'd have to go back and check the record. But in any event, I don't think that a decision in this case should be governed by what Judge Hellerstein, by some sort of disquiet that he might have expressed in an earlier proceeding, where he could have done nothing about it, his hands were 100% tied. He had to impose a life sentence. Do you mind? I mean, I would be interested to know if Judge Hellerstein made the kind of statements that you just said you would call expectant. Can you, in the shortest possible letter on this, smallest piece of paper, tell us where this might be for him? Sure, in the smallest font available. Eight and a half by 11 is good. Sure, I'd be happy to go back and- I kind of had this in mind. I'd be happy to go back and look, and I'm not sure whether he said it at those various times. I understand. Yeah. I understand that. But whatever it is he said, like that, I would feel better knowing that I didn't miss it. But I would like to raise that whether the court found, the court was put to the question of whether there was an extraordinary and compelling circumstance only once, and that was in this motion. And even if he had never expressed disquiet, because he never could have done anything about it, I'm not sure it has any bearing. No, I'm not either. You mentioned, and you are mentioning it, which was made interesting to me. I would not have- So, two questions. One relates to the sentencing disparities issue. And as Judge Kahn pointed out, a couple of our sister circuits seem to foreclose the reliance on sentencing disparities, Hunter from the Sixth Circuit being one of them. How do you distinguish them? Do we have that wrong? Your Honor, I know we've certainly looked at those cases during the briefing. And my recollection is that those were all challenges to the sentence as being unlawful. I don't believe that any court has said that that extraordinary and compelling somehow carves out sentencing disparities. In fact, we've cited numerous cases- It was a direct challenge to the sentence itself. It was a direct challenge to the lawfulness of the sentence, where I believe those cases, many of them I don't believe were even in the compassionate release context, were appeals where defendants said the judge erred because he did not consider sentencing disparities that were not between me and my co-defendant, but rather other similarly charged people. And the court said that was not an error. And my second question is a broader question that relates to the broad language in Brooker. What is the limit to your argument? In other words, set aside rehabilitation, obviously, because that's in the statute. What is the limit? So is it, you know, Chief Judge Underhill had a very famous article in the New York Times about a second look, but that is not incorporated, as I understand it, in the First Step Act, per se. What effectively you're asking us to embrace is permitting district court judges to just have a second look and, well, a reading of the First Step Act that permits federal district judges a second look. And if they have second thoughts about a sentence, they can do whatever they want. Well, I'm not sure that that's quite right. First, I would start with the language of the statute, which is extraordinary and compelling circumstance. So as far as the limiting principles, it's really on Congress who did not provide any limiting principles except for one, which is rehabilitation. As far as what the limiting principle is on judges, I think there are a few. One, the circumstances have to be extraordinary, right? And in this case, one of the reasons the circumstances were extraordinary was that the defendant was convicted and given a life sentence. The judge had had no discretion to adjust the sentence at all based on these second thoughts or concerns. In addition, while this Court has never ruled this way, the government has said claims that could be brought on habeas cannot be brought on compassionate release. That would be another basis. So if there was something, if the concerns were that there was prosecutorial misconduct and new evidence or evidence that had been withheld, that could not be brought on compassionate release. Similarly, ineffective assistance that the first lawyer didn't bring things up couldn't be brought on compassionate release. So this is an extraordinarily unusual case. In fact, I haven't seen any other case where a defendant made an argument of, you know, I might be innocent. And a judge said, yeah, you know, I think that that's true. You might be innocent. Because isn't that because claims of innocence challenged a validity of a conviction? I mean, what else does it challenge other than the validity of the conviction? And getting to the Hunter case, the Sixth Circuit, the Sixth Circuit in that case and the claim there was age and disparity. The age of the defendant at the time of the murder and the sentencing disparities between the defendant and his co-defendants. And the Court said those facts existed in sentencing. To find extraordinary and compelling reasons for a sentence reduction because such an approach nullifies the extraordinary and compelling reasons requirement that transforms a 3582 C1A into an unbounded resentencing statute. So the Sixth Circuit said to allow this would basically turn 3582 to a resentencing statute. Isn't that what happened here? No, Your Honor, because the defendant was sentenced to life in prison. The judge never had an opportunity to sentence the defendant based on the 3553A factors. Whereas in the Hunter case, I don't believe there was that mandatory minimum sentence. And I'd like to make one- And that didn't change, right? If you were convicted today, that would be the same result unless the validity of the conviction was at issue. Well, no, Your Honor, because Congress has given a safety valve to judges to say in a really extraordinary situation. And the reason this is an extraordinary situation is because the government does not convict innocent people. The government typically does not prosecute innocent people. So therefore, this is an extraordinarily unusual case where the judge sat through an entire trial and thought the jury got it wrong. Any time any defendant is subject to a sentencing scheme that's statutorily mandatory, whether it's life or something less than life, then your position is they would have an opportunity for resentencing under 3582 because the judge had no choice originally at sentencing. How is that not turning in the section on compassionate relief into resentencing? I'm struggling with that, counsel.  So as of now, the government brings many cases where there is a mandatory sentence. So the mere fact that there is a mandatory minimum sentence does not make a case extraordinary. What would make a case extraordinary is other circumstances that did not allow a judge to go below the mandatory minimum and that the judge, had the judge had the discretion, would have gone significantly below the mandatory minimum. So it has to be the same judge? So had it been a different judge, which is often the case, would your argument still, as they say, hold water? I think it would hold water, but I think that that would be very unlikely because part of, I think a very strong part of what motivated Judge Hellerstein is that he sat through the trial. He saw the cooperator. There is no way that another judge would have known that there were these credibility issues because that's what Judge Hellerstein was able to see. And that's why so much of Judge Hellerstein's decision is bound up in his credibility determination of Judge Darge. I mean, I'm sorry, of Mr. Darge. Okay. Thank you. And what I will probably ask is for you to submit your letter. Well, I'll definitely ask you to submit your letter by Friday and close the business. And if the government wants to submit a letter on the same day, that'd be helpful. On this issue, just sideways. Thank you. There are four points I'd like to hit quickly. First, Judge Loyer, to respond to your question from earlier, another case that I was trying to think of earlier where the court said that sentence disparities are not a basis for compassionate release is the Garcia case from the 11th Circuit. That's cited in our brief. The Jenkins case from the D.C. Circuit also discusses sentencing arguments not being an appropriate basis for compassionate release. Two, I just want to respond to the points about Rivera and the credibility issues of Darge. First, on Darge's credibility issues, Judge Hellerstein granted Darge's, granted the 5K motion as to Darge. There was no finding at Darge's sentencing that Darge was not credible. And as to Rivera, it is obvious from this record why there were reasons that the government was unable to bring murder charges against Rivera, even though it was able to bring them against Fernandez. Most obviously, yes, there was Patrick Darge's testimony, but as to Fernandez, there were also his confessions to two other people who cooperated, Alan Darge and the jailhouse cooperator, both of whom testified about confessions that Fernandez made. That is obviously extremely strong corroboration of Fernandez's guilt that did not exist as to Rivera. As to these letters that are due Friday, we're happy to submit one, but I can also answer the question now, Judge Stack. I'm not, even better. There, Judge Hellerstein. Even better if one of my law clerks is right here. Okay, okay, take this down. So, Judge Hellerstein not only did not say, you know, he had hesitations about applying a life sentence, but it's really interesting what he did with count two here. And I know count two is out of the picture now, but if you look at the appendix at pages 106 to 108 and 119 to 121, Judge Hellerstein said, okay, this count two, yes, there's mandatory life on count one. Count two has a 10-year mandatory minimum. He said, hey, you never know what's going to happen with count one. You never know. So, let's talk about what is an appropriate sentence on count two. And he thought carefully here about what to do with count two, and he asked counsel, make an argument to me. Make an argument about what sentence I should impose on count two, notwithstanding the man-min life on count one. Counsel requested the man-min 10 years, and Judge Hellerstein said, no. He said, I'm going to give life on count two as well, since death resulted, and he wanted to recognize that two people's lives who deserve, two people who deserve to live were killed in what was found to be cold blood. And so, he said a life sentence is also appropriate on count two. That's at 120 to 121 of the appendix. And finally, as to Judge Loyer, your question about what the limits are here, there really are no limits to this order's reasoning and to defense's argument here. Every defendant who's in prison obviously wants to get out of prison. And if they're given the choice between vacating the conviction or getting out of prison, one or the other, they're going to choose getting out of prison first. And if you can avoid all the stringent requirements of Rule 29 and Rule 33, of sufficiency challenges on direct appeal, and all the procedural hurdles of 2255, by obtaining release from prison based on the judge's disquiet, the judge's basically doubt that the judge, if sitting himself as a juror, might not have found that the evidence proved guilt beyond a reasonable doubt. If you can obtain release from prison based only on that, then it really renders that entire procedural framework meaningless. And Congress, in drafting 3582, did not intend that. And the way we know that is because that's not how- We don't know that from the text. Well, we know from what the text doesn't say. As the Supreme Court has said, and this Court has applied this principle many times, where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. So that particular phrasing is Morton v. Mancari, 417 U.S. 535, and pages 550 to 51. This Court has applied that principle again and again, as has the Supreme Court. Congress does not repeal by implication, and courts are not allowed to find that Congress has repealed by implication, unless two statutes are totally irreconcilable. Here, these procedural regimes are completely reconcilable. Compassionate release deals with, as Judge Kahn said, circumstances that arise after sentencing, circumstances particular to the defendant, defendant's health, defendant's family. 2255 is the vehicle for final convictions and sentences to be challenged. And of course, there are all the post-trial vehicles and the direct appeal vehicles. And Fernandez appealed, pursued all of those here without success, and it was without success for very good reason. And so the district courts- Anybody can answer this, but I don't know. Is Mr. Fernandez out of jail now? He is out, yes. On supervised release? He's on supervised release, yes. Thank you very much. We'll reserve the decision. And so you don't have to submit a letter, Mr. Baumann, but we'll look for a letter from you on Friday, with the benefit of what you just heard. Thank you very much.